**STATE of Missouri, Respondent,**

v.

**Bruce MOTLEY, Appellant.**

No. 52335.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 6, 1987.

Motion for Rehearing and/or Transfer
Denied Nov. 6, 1987.

Application to Transfer Denied
Dec. 15, 1987.

Mary Clare McWilliams, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Donna Richards-Crosswhite, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Defendant Bruce Motley was found guilty by a jury in the St. Louis City Circuit Court of robbery in the first degree, RSMo § 569.020 (1986) and armed criminal action, § 571.015.1 (1986). Finding the defendant to be a prior offender, the court sentenced defendant to twenty-five and five years respectively, sentences to run consecutively.

On appeal, defendant contends that the trial court erred in (1) denying defendant's motion in limine and admitting into evidence two pages from a police ledger book containing defendant's photograph, and receiving state witnesses' testimony to the effect that the ledger book contained photographs of persons who had prior police involvement, which was emphasized by the prosecutor during closing argument; (2) denying defendant's motion to suppress the out of court photograph identification of the defendant and the line-up identification of the defendant; and (3) failing to declare sua sponte a mistrial for prosecutorial misconduct.

On February 1, 1986, a robbery occurred at the Dairy Queen located on 2140 East Grand Avenue at approximately 11:00 p.m. The police arrived at the scene shortly thereafter and took statements and descriptions of the robber. Later that evening, the police returned with a police ledger book containing photographs of possible suspects. Although no police officers were present when the witnesses examined the book, each testified that they independently identified the defendant as the robber.

On February 15, 1986, the police arrested defendant and conducted a line-up. The line-up occurred prior to formal charges. Defendant was never informed of the right to counsel at the line-up and was never given the opportunity to waive this right. Two of the three witnesses were available for the line-up. Both witnesses independently identified the defendant as the robber.

Pretrial hearings were conducted in response to defendant's various motions. One motion in limine requested that the state not use the term "mug shot" or any other prejudicial phraseology when making reference to the photographs. The state then agreed not to make any prejudicial references as to where the photographs came from and volunteered to instruct the police officers not to make such references when testifying. The trial court overruled defendant's motion "subject to further being reinstated." Defendant's motion to suppress requested that all evidence relating to the identification of the defendant be suppressed. This motion was overruled as well.

During trial, over defendant's pretrial motions and continuing objections, state's Exhibit No. 1 was admitted into evidence. Exhibit No. 1 consisted of six mug shots, one of which was the defendant. Each picture, including the defendant's, contained the following information: a front and side profile; the words "St. Louis Metro Police Department"; an identification

number; a date; name; and physical description.

During cross-examination, one of the employees testified that she was not absolutely sure the book she was reviewing in court was the same book she viewed the night of the crime. On cross-examination of a police officer, the defense attorney asked the officer whether the ledger book was the same photo book the witnesses reviewed on the night of the robbery. In response to the question, the officer stated: "I don't maintain them. Books of this nature are maintained usually by the detective division and are usually comprised of people who have some police involvement." The defense attorney made no objection to the answer at this time.

In the state's closing arguments the prosecutor made the following comments: "Remember, it was not the state's attorney, it was the defense attorney who told you that people who are arrested before are placed in this book." The defense attorney objected and stated that it was the state's witness not the defense attorney that made this statement. The objection was overruled as untimely. At the close of trial, the jurors were given, over defendant's objection, all the exhibits, including the photographs, to review during deliberation.

In his first point, defendant contends that the court erroneously admitted into evidence two pages from the photograph ledger book and police officer's statement "... books of this nature are usually comprised of people who have had some police involvement." Defendant further argues that the prosecutor's statement during closing argument emphasized and enhanced the prejudicial effect of this evidence.

Initially, we note that defendant failed to properly preserve for appeal the alleged errors regarding police officer's statement and the prosecutor's comment during closing argument. Although defendant has not properly preserved these points for appellate review, the court may, within its discretion, review for plain error. Rule 29.12. The standard of review under Rule 29.12 allows reversal only for prejudicial errors which so substantially affect the rights of the defendant that manifest injustice or miscarriage of justice would result if left uncorrected. *State v. Hanes*, 729 S.W.2d 612, 616 (Mo.App., E.D.1987).

First we will examine the state witness' comment during cross-examination. Defendant relies on *State v. Quinn*, 693 S.W.2d 198 (Mo.App., E.D.1985). In *Quinn*, we reversed the trial court's refusal to grant a mistrial after a detective testified that thirty-six photographs, including the one of the defendant, had "come from my robbery and crime books." *Id.* at 199. The defendant in *Quinn* immediately objected and asked the court to consider a mistrial or instruct the jury to disregard the statement because of possible prejudicial effects. In the case at bar, defendant failed to object and the trial court was never given the opportunity to rule on the alleged error. Additionally, the phrase "they came from my robbery and crime books" is much more suggestive of prior criminal activity than the statement "the books are usually comprised of persons with prior police involvement." We do not imply that such testimony is ordinarily permissible, but in the context of the entire record, the statement does not rise to the level of manifest injustice.

We now examine the prosecutor's statement during closing argument. A trial court has wide discretion in determining the permissible scope of counsel's closing arguments to the jury. *State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). We reverse for errors in closing statements only when the trial court has clearly abused this discretion. *State v. Mitchell*, 611 S.W.2d 223, 227 (Mo. banc 1981). Moreover, alleged errors in closing arguments will not justify relief under plain error unless they are determined to have a decisive effect on the jury. *State v. Davis*, 566 S.W.2d 437, 447 (Mo. banc 1978).

During closing argument counsel may comment on evidence raised at trial. A defendant who permits testimony to be

introduced at trial without objection cannot later complain about the prosecutor's improper remarks on such evidence during closing argument. *State v. Brock*, 273 S.W.2d 166, 168 (Mo.1954). Although the prosecutor in the instant case misstated the evidence, we do not feel this misstatement alone rises to the level of manifest injustice, nor do we find that the trial court abused its discretion.

■ Finally, we examine the alleged error regarding the introduction of the two pages from the police ledger book which defendant properly preserved for review. The two pages of the police ledger book included six photographs, one of which was the defendant. Each photograph contained the words "St. Louis Police Department" and an identification number. The law in Missouri is clear. In order for mug shots to be admissible, inculpatory information must first be removed. *State v. Quinn*, 693 S.W.2d 198, 200 (Mo.App., E.D.1985). As this procedure was not followed in this case, the trial court erred in admitting the "unmasked" mug shots into evidence.

■ But, in matters involving the admission of evidence, this court reviews for prejudice, not mere error. *State v. Tyler*, 676 S.W.2d 922, 924–25 (Mo.App., E.D. 1984). Therefore we should only reverse if the error was so prejudicial that it deprived defendant of a fair trial. *State v. Williams*, 606 S.W.2d 254, 256–57 (Mo. App., S.D.1980). Although the impermissible reference to defendant's prior bad acts presents the possibility of prejudice,[1] error may be disregarded as harmless where evidence of defendant's guilt is very strong. *State v. Beasley*, 731 S.W.2d 255, 257 (Mo. App., E.D.1987); *State v. Montgomery*, 596 S.W.2d 735, 738 (Mo.App., E.D.1980).

The evidence of defendant's guilt in this case was very strong. The robbery took place in a well lit store. Each witness had an excellent opportunity to view the robber at the scene of the crime. Each witness independently identified defendant as the robber from a police ledger book on the night of the robbery. Two of the three

witnesses went to the police station to view a line-up. Both witnesses identified defendant as the robber. In light of the overwhelming identification evidence indicating defendant's guilt, the admission of the mug shots was clearly harmless error. *State v. Miller*, 650 S.W.2d 619, 621 (Mo. banc 1983). Defendant's first point is denied.

■ In his second point, defendant contends that the trial court committed reversible error by denying defendant's motion to suppress the out of court photograph identification and the line-up identification of the defendant. In reviewing the disposition of a motion to suppress identification testimony, we are limited to a determination of whether the evidence was sufficient to sustain the trial court's findings. *State v. Downing*, 671 S.W.2d 279, 280–81 (Mo.App., E.D.1983). In determining the admissibility of identification testimony, reliability rather than suggestiveness provides the linchpin in securing due process. *State v. Robinson*, 641 S.W.2d 423, 427 (Mo. banc 1982).

■ To determine reliability the trial court must look at the "totality of the circumstances" including: the opportunity of the witness to view the criminal at the time of the offense; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. *State v. Charles*, 612 S.W.2d 778, 780 (Mo. banc), *cert. denied*, 454 U.S. 972, 102 S.Ct. 522, 70 L.Ed.2d 392 (1981).

■ Upon review of the transcript we take note of the following evidence presented at the suppression hearing. The out of court identifications took place the same evening as the robbery. The robbery took place in a well lit store. Each witness testified that they had ample opportunity to observe the robber at the scene of the crime. Finally, each witness testified that

---

1. We note that no Missouri case explicitly states that mug shots admitted into evidence which indicate prior criminal activity are prejudicial if not masked.

they independently identified the defendant as the robber. The trial court is in a much better position to assess the credibility of these witnesses and we defer to the trial court's conclusion. Our review of the record indicates that the evidence is sufficient to sustain the trial court's finding.

As to the line-up identification, the accused's sixth amendment right to counsel does not attach until the initiation of adversarial proceedings. *Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972). Initiation of adversarial proceedings has been held to begin at or after preliminary hearing, indictment, information, or arraignment. *Id.* at 689, 92 S.Ct. at 1882. Thus, the accused is entitled to counsel at a post indictment or post information line-up identification. However, no presence of counsel is required where the line-up occurs *before* defendant has been formally charged. *Morris v. State*, 532 S.W.2d 455, 457 (Mo. banc 1976).

In the case at bar, the line-up occurred on approximately February 15, 1986, but no charges were lodged against defendant until February 25, 1986, and the information was not filed until March 25, 1986. Thus defendant was not entitled to counsel at the line-up. Point denied.

In his final point on appeal, defendant alleges that the trial court erred in failing to declare a mistrial sua sponte because of prosecutorial misconduct which deprived defendant of a fair trial. Defendant alleges that the prosecutor committed two acts of misconduct. Defendant first alleges the prosecutor referred to alleged attempted intimidation of witness Bass by defendant within the hearing of the jury. Second, defendant claims that the prosecutor violated Rule 25.03 in failing to disclose that witness Bass would testify concerning defendant's alleged attempted intimidation.

We initially note that defendant failed to preserve these points for review. Although he included those allegations in his motion for new trial, defendant failed to timely object. Our review is therefore limited to plain error. Rule 29.12. We will only reverse to prevent manifest injustice. *State v. Hanes*, 729 S.W.2d 612, 616 (Mo.

App., E.D.1987). We further note that granting a mistrial is a drastic remedy only to be used by the trial court in extraordinary circumstances. *State v. Johnson*, 700 S.W.2d 815, 819 (Mo. banc 1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986). The trial court has broad discretion in determining whether to grant a mistrial, and we will only reverse for an abuse of that discretion. *Id.*

Following the testimony of witness Waters, the prosecutor requested permission to approach the bench. The following exchange occurred:

MR. BANKS: Your Honor, at the next recess, even though the State is prepared to go further, we have all the witnesses but the next time the Court deems it necessary to have a recess I would like to have Witness Bass voir dired out of the presence of the jury because the State is not [sic] formally requesting that the defendant's bond be revoked because of his attempts to intimidate Ms. Bass and we would like to have her put on the record evidence of that taking place.

MS. FELDMAN: Your Honor, I request that Mr. Banks not speak so loudly. The jury can hear.

Thereafter the court excused the jury for lunch and received testimony regarding defendant's alleged intimidation of the witness. The prosecutor moved to revoke defendant's bond. The court overruled the motion.

Defendant contends that the prosecutor made his initial remark within the hearing of the jury. In the opinion of defendant's counsel, the prosecutor was speaking loudly and the jury could hear. Defendant's assistant counsel testified that he thought the prosecutor spoke loudly enough that the jury might have heard him. The prosecutor stated that he spoke at the bench in order to avoid the jury overhearing and then requested the jury be excused so as to avoid prejudice to the defendant. Defendant never objected or moved for a mistrial, nor did he request to voir dire the jury to find out if they had in fact heard the prosecutor's remark.

■ We believe the trial judge was in the best position to determine whether the prosecutor's remarks were overheard by the jury or constituted prosecutorial misconduct. Absent a clear, contrary showing in the record indicating an abuse of discretion, we will not reverse the trial court for failing to declare a mistrial upon its own motion. We find no abuse of discretion.

■ Defendant also alleges prosecutorial misconduct in the prosecutor's failure to inform defense counsel that witness Bass would testify to alleged intimidation by defendant. Defendant asserts that the prosecution's failure violated Rule 25.03. But Rule 25.03 only requires the prosecutor to disclose the witness' name and address, written statements, or memoranda summarizing oral statements. Rule 25.03. *State v. Kerfoot,* 675 S.W.2d 658, 661 (Mo. App., E.D.1984). Defendant alleges error in the prosecutor's failure to disclose a summary of the witness' proposed testimony. Such a disclosure is not required by the Rule. Defendant's final point is denied.

Finding defendant's arguments without merit, we affirm defendant's conviction.

STEPHAN, J., concurs.

SIMON, J., dissents in separate opinion.

SIMON, Judge, dissenting.

The majority agrees that the unmasked mug shots were erroneously admitted into evidence. However, they argue that in light of the overwhelming evidence against the defendant, the resulting error was harmless. I respectfully dissent on this point. The erroneous admission of evidence is presumed prejudicial and may not be considered harmless unless it is so beyond a reasonable doubt. *State v. Miller,* 650 S.W.2d 619 (Mo. banc 1983). Here, there is no doubt that the admitted evidence suggested prior criminal activity. The two pages of the police ledger book included six photographs (mug shots), one of which was the defendant. Each photograph contained: (1) front and side profile; (2) the words "St. Louis Police Depart-

ment;" and (3) an identification number. More specifically, defendant's photograph (mug shot) contained:

ST. LOUIS METRO. P.D.

158464

DATE: 01   20   84

NAME: MOTLEY BRUCE E.

| AGE | HEIGHT | WEIGHT | HAIR | EYES |
|-----|--------|--------|------|------|
| 29 | 71 | 145 | Black | Brown |

The rule is well established that criminal defendants have a right to be tried only for the offense for which they are charged. *State v. Williams,* 652 S.W.2d 102, 110 (Mo. banc 1983). Thus, evidence of other crimes is inadmissible unless: (1) such evidence tends to establish the defendant's guilt in the crime for which he stands trial (i.e. motive, intent, identification, absence of mistake or accident, common scheme), *see State v. Trimble,* 638 S.W.2d 726 (Mo. banc 1982); or (2) the defendant has taken the stand or otherwise placed his character in issue.

The case at bar is clearly distinguishable from those cases where the admissibility of mug shots has been approved. In *State v. Futrell,* 565 S.W.2d 465, 467 (Mo.App. 1978), the incriminating police data on the mug shots were removed. In *State v. Childers,* 313 S.W.2d 728, 731 (Mo.1958), only numbers appeared on the bottom of the photographs. In *State v. Cook,* 637 S.W.2d 110 (Mo.App.1982), the mug shots were only briefly revealed when the prosecutor's file was momentarily left open on the counsel table. Additionally, there was no indication that any juror even saw the mug shots or that this had any affect on any juror. In *State v. Jones,* 531 S.W.2d 67, 73 (Mo.App.1975), defendant took the stand and admitted on direct examination that he had previously committed a felony.

In the instant case, no attempt was made to cover up the inculpatory information. The mug shot contained not only defendant's picture, but five others each containing inculpatory information. The impact of this evidence was further enhanced by the prosecuting attorney's remarks during

closing argument. The prosecutor emphasized that people who have been arrested before are placed in the book which contained the mug shots. The jury was then allowed to view the photographs during deliberation. It is highly unlikely in this instance, that defendant's prior criminal activity was not impressed upon the minds of the jurors. Additionally, although the defendant presented alibi witnesses, he never took the stand and never placed his character in issue.

In *State v. Brown*, 670 S.W.2d 140, 141 (Mo.App.1984), we noted that caution should be exercised regarding erroneously admitted evidence of other crimes because of its tendency to cause an improper presumption of guilt in the minds of the jurors. In the instant case the majority relies on *State v. Beasley*, 731 S.W.2d 255, to justify its position. In *Beasley*, leaves were found in an overnight bag admitted into evidence, supporting defendant's guilt in another crime. The presence of the incriminating evidence was unknown until a few jurors mentioned it to the prosecuting attorney after the verdict had been rendered. The presence of the evidence was immediately brought to the court's attention. The admission of this evidence was found harmless only after the judge conducted a special voir dire and all of the jurors, polled individually, stated that the leaves in no way influenced their decision. *Id.* at 257.

Additionally, in *Beasley* we stated the rule that: "[g]enerally, placing evidence before the jury of other crimes committed by a defendant constitutes prejudicial error. *Osborne v. United States*, 351 F.2d 111, 115 (8th Cir.1965), and to declare such an error harmless, the court must be satisfied *beyond a reasonable doubt that the error did not contribute to the defendant's conviction* citing *United States v. Bishop*, 492 F.2d 1361, 1365 (8th Cir.1974), *cert. denied*, 419 U.S. 833, 95 S.Ct. 59, 42 L.Ed.2d 59. (emphasis added)"

In the instant case, the majority failed to recognize that both the state and the defendant presented witnesses. The defendant's witnesses testified that defendant was at another place at the time of the offense. Where contrary evidence is presented, the decision turns on the credibility of witnesses. Thus, we must carefully consider whether the erroneously admitted evidence tipped the scales against the defendant. Where erroneously admitted evidence relates to a defendant's prior criminal activity, such information very likely effects the credibility of his defense.

In the instant case, the information on the mug shots clearly suggested prior criminal activity. The information had absolutely no probative value or relevance to the crime for which the defendant was convicted. In *State v. Perry*, 689 S.W.2d 123, 126 (Mo.App.1985), we held that evidence erroneously admitted by virtue of its inherent prejudicial nature and lack of relevancy, coupled with the state's advert reference to it before the jury to obtain defendant's conviction, dispels any credence to the state's argument that any error associated therewith is harmless. Furthermore, we cannot be sure beyond a reasonable doubt that the jury disregarded or was not influenced by the inculpatory information.

For the foregoing reasons, I would reverse and remand for a new trial.